(25 Misc. Rep. 182.)

## DE LEON v. McKERNAN et al.

(Supreme Court, Appellate Term. November 10, 1898.)

EXPRESSMEN—DELAY IN DELIVERY OF TRUNK—DAMAGES.

One about to sail from New York for Barbados hired expressmen to haul his trunk to the pier by a certain hour. The trunk was not delivered at the time agreed, and the ship sailed, with plaintiff on board, who got off at Sandy Hook, and hired a tug to return him to New York, where he waited 16 days for the next boat. He cabled to Barbados concerning his other trunks, and bought an extra ticket to Barbados. *Held*, in an action against the expressmen, that the cost of the extra ticket was the only injury approximately resulting from the failure to deliver the trunk, since the others were not within the contemplation of the contracting parties, and there was no showing why plaintiff could not have discovered the trunk's absence before he sailed, and thus saved the price of the tug, or informed the ship's officers regarding his other trunks, and thus saved the price of the cable, and no evidence by which the court could arrive at the difference between his living expenses at New York while waiting for a boat, and those at Barbados.

Appeal from municipal court, borough of Manhattan, Tenth district.

Action by George De Leon against Edward McKernan and others. There was a judgment for plaintiff for less than the amount demanded, and he appeals. Affirmed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

H. M. Greene, for appellant.
E. S. Godfrey, for respondents.

GILDERSLEEVE, J.    The action is for damages for a breach of contract.    The defendants were co-partners in the business of expressmen.    On the morning of October 30, 1897, the plaintiff, a commercial traveler, asked defendants if they would get his trunk down to pier No. 47, North river, before 11 o'clock that morning, as the boat upon which plaintiff was to go to Barbados sailed promptly at noon, and the steamship company required the baggage to be there by 11 o'clock.    The defendants agreed to get the trunk there in time, and plaintiff paid them 50 cents expressage.    One of the defendants swears that he gave to the plaintiff a receipt, in which the contract of expressage was set forth, limiting the liability of defendants to the sum of $25.    The plaintiff, however, swears that he never received any such receipt.    The trunk was not delivered at the pier until after 12 o'clock, and after the boat had sailed, with the plaintiff on board.    As the trunk contained important articles for use in Barbados, which rendered it essential for the plaintiff to take it with him, plaintiff, upon discovering that the trunk was not on board, got off the boat at Sandy Hook, and hired a tug to bring him back to New York, where he remained for some 16 days, waiting for the next boat for Barbados.    The plaintiff swears, without contradiction, that he had no business in this city during that interval between the sailing of the two boats; that he depended for his living entirely upon his knowledge and efforts in selling goods outside the United States; that he usually spent only 7 or 8 days here, between his trips of 5 or 6 months in the West Indies; that he paid his own expenses in his commercial traveling; and that his expenses in the West Indies were much less than they were here, for the reason that he had a large number of friends there who put him up for nothing.    He further swears, without contradiction, that he paid $15 for the tug; $9.84 for a cablegram to Barbados in reference to his other trunks, which had gone by the steamer on October 30th; $12 for room rent; $30 for living expenses during his enforced stay here; and $10 for an extra ticket to Barbados.    In this action he seeks to compel the defendants to reimburse him for these sums so paid, amounting in the aggregate to $76.84.    The court rendered the following decision, viz.:    "Under the proofs, the item of $10 for extra passage ticket is the only direct damage resulting from defendants' default;" and judgment was, accordingly, given in plaintiff's favor for $10 and costs, amounting in all to $23.37. From this judgment the plaintiff appeals to this court, on the ground of the insufficiency of the amount awarded.

Are the items of $42 for board and room rent, $15 for the tug, and $9.84 for the cablegram such direct and natural consequences of defendants' breach of contract as make them chargeable therefor? On his cross-examination the plaintiff admits that when he made his contract with the defendants he simply told them that he would have to get the steamer, without specifying the consequences that would follow in case the defendants failed to get the trunk at the pier in time for it to be put on the boat.    In the case of Rochester Lantern Co. v. Stiles & Parker Press Co., 135 N. Y. 209–217, 31 N. E. 1018,

1021, Chief Judge Earl lays down the rule of law in the following language, viz.:

"It is frequently difficult, in the administration of the law, to apply the proper rule of damages, and the decisions upon the subject are not harmonious. The cardinal rule undoubtedly is that the one party shall recover all the damage which has been occasioned by the breach of the contract by the other party. But this rule is modified in its application by two others; the damages must flow directly and naturally from the breach of the contract, and they must be certain, both in their nature and in respect of the cause from which they proceed. Under this latter rule, speculative, contingent, and remote damages, which cannot be directly traced to the breach complained of, are excluded. Under the former rule, such damages only are allowed as the parties may fairly be supposed, when they made the contract, to have contemplated as naturally following its violation."

In view of the fact that plaintiff gave no intimation to the defendants of the consequences that would follow their failure to perform their contract, we do not think that the items of alleged damage under consideration can be reasonably supposed to have been within the contemplation of the contracting parties at the time of making the contract, as naturally following its violation by the defendants. There is nothing in the evidence to show why plaintiff could not have ascertained if his trunk had been delivered before he went on the ship himself, and thus obviated the necessity of hiring the tug to bring him back from Sandy Hook. The testimony shows that it was the usual custom for passengers to reclaim their baggage before it was put on board the boat, although the plaintiff asserts that such procedure was not necessary with this particular steamship company. There is nothing, however, to indicate that defendants were aware of this exception to the rule. No reason is given to show that plaintiff could not either have arranged with the officers of the ship with regard to his other trunks that were already on board, or have taken them off with him, and thus avoided the necessity of the cablegram. Nor is there any evidence by which we could arrive, with any sort of certainty, at the difference between plaintiff's living expenses had he gone to Barbados on October 30th and those which he incurred by reason of his enforced stay in New York. We are of opinion that the justice fell into no error in declining to award to the plaintiff the items of damage claimed on this appeal.

The judgment, so far as assailed on this appeal, should be affirmed, with costs of the appeal to the respondents. All concur.